**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID ALLEN RAWLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-CV-01294 SPM |
| | ) | |
| RONNIE DRAKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Plaintiff David Rawlings, a self-represented prisoner, brings this action under 42 U.S.C. § 1983 for alleged civil rights violations. [ECF No. 1]. He seeks appointment of counsel and leave to proceed in forma pauperis. [ECF Nos. 2 and 3]. For the reasons set forth below, the Court grants Plaintiff's Motion to Proceed in Forma Pauperis, assesses an initial partial filing fee of $2.64 and will dismiss Plaintiff's official capacity claims from this action. Plaintiff's Motion for Appointment of Counsel will be denied, without prejudice, at this time. The Court will issue process on Plaintiff's claims against Defendants in their individual capacities.

I.      **Filing Fee**

Congress mandates that federal courts collect a filing fee from a party instituting any civil action, suit, or proceeding. 28 U.S.C. § 1914. Courts may waive this fee for individuals who demonstrate an inability to pay. 28 U.S.C. § 1915(a)(1). When a court grants such a waiver, the plaintiff may proceed in forma pauperis. To obtain in forma pauperis status, a prisoner litigant must file an affidavit demonstrating his inability to pay. 28 U.S.C. § 1915(a)(1). In addition to the standard in forma pauperis affidavit, a prisoner must provide a certified copy of his inmate

account statement for the "6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

If the prisoner litigant lacks sufficient funds, the Court assesses an initial partial filing fee equal to 20 percent of the higher of the average monthly deposits or the average monthly balance in the prisoner litigant's account. 28 U.S.C. § 1915(b)(1). After that, the prisoner litigant must make monthly payments equal to 20 percent of the previous month's income until the prisoner litigant pays the fee in full. 28 U.S.C. § 1915(b)(2). "The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." *Id.*

Plaintiff filed a Motion to Proceed in Forma Pauperis and submitted a certified inmate account statement for the period from March 10, 2025, through August 11, 2025. [ECF Nos. 3 and 5]. The account statement reflects an average account balance of $11.75 and an average deposit of $13.30. Therefore, the Court grants Plaintiff's Motion to Proceed in Forma Pauperis and assesses an initial partial filing fee of $2.64, representing 20 percent of his average deposit.

## II.    Background

Plaintiff is an inmate at Moberly Correctional Center (MCC) in Moberly, Missouri. [ECF No. 4]. He filed his initial Complaint August 26, 2025, while he was incarcerated at Farmington Correctional Center (FCC) in Farmington, Missouri relative to allegedly deficient medical care he received at that facility. [ECF No. 1]. Plaintiff sues four Centurion employees in this action in

their individual and official capacities: Dentist Ronnie Drake; X-Ray Technician Bobby Tiefenauer; Health Service Administrator Lisa Ivy[1]; and Director of Nursing Hollie Smith.[2]

Plaintiff's allegations concern dental issues that arose while he was incarcerated at FCC. He asserts that he was denied proper dental care on three separate occasions by defendants: May 13, 2024; January 22, 2025; and February 12, 2025. Plaintiff asserts that on May 13, 2024, dentist Ronnie Drake pulled his top left wisdom tooth and a portion of his top left incisor. He claims that this left him with a large mass of scar tissue in the upper left portion of his mouth that was extremely painful. He states that the pain lasted approximately 49 days. [ECF No. 1 at 8-9]. Plaintiff claims that he attempted to speak to defendant Drake and Lisa Ivy about the injury on January 22, 2025, and defendants told him that they did not need to provide him with medical care because he had informed them that he was suing them. *See id.* at 9. Drake then spent an hour extracting Plaintiff's bottom right wisdom tooth and top right canine. *Id.*

Plaintiff complains that when Drake extracted his bottom right wisdom tooth on January 22, 2025, he left a fracture down the middle of the right side of his lower mandible, causing him extreme pain. Plaintiff claims that he was unable to chew on the right side of his mouth for approximately 84 days, and two large fragments of bone came out of his mouth: one fragment approximately 3 mm and another fragment approximately 4 mm. *Id*. However, when an X-Ray was taken by defendant Bobby Tiefenauer a few days after the extraction, Tiefenauer reported

---

[1] Plaintiff has provided documents attached to his Complaint showing decisions made at Centurion relative to his dental care by an individual named Lisa Bird. The Court assumes that Lisa Bird is the same individual that Plaintiff refers to as Lisa Ivy in his Complaint. If Plaintiff wishes to change Defendant Ivy's last name in the Court record, he should file a Motion to Substitute.

[2] Plaintiff spells Direct of Nursing Hollie Smith's name as "Holly Smith" in his Complaint, however, defendant's name is spelled as "Hollie Smith" on the Informal Resolution Request Response attached to Plaintiff's pleading. The Court will have the Clerk update the docket to reflect the proper spelling of Defendant's name.

that there was no evidence of fractures or breaks in the mandible. *Id*. Plaintiff refutes

Tiefenauer's position because he states that he has bone fragments in his possession. *Id.*

On February 12, 2025, Drake extracted Plaintiff's top right canine. [ECF No. 1 at 10].

Plaintiff states that "during the extraction of my top right canine, the defendant pushed the tooth

inward completely sideways and fractured the bone in the front of my mouth." *Id*. He claims that

he suffered pain for approximately 99 days after the procedure, and that it hurt so much that he

was unable to touch his gumline. Plaintiff alleges that despite his claims of fracture, Tiefenauer

refused to do an X-Ray of his mouth.

Plaintiff alleges that despite making several Health Service Requests relating to his

mouth pain, lacerations from the procedures, requests for X-Rays, as well as his complaints

about the fractures, Health Service Administrator Lisa Ivy and Director of Nursing Hollie Smith

investigated his complaints and told him that his dental needs were properly treated.

Plaintiff has attached three Informal Resolution Requests (IRRs) and their responses to

his Complaint, which the Court treats as part of Plaintiff's pleading.[3] [ECF No. 1-1 at 1-6]. On

October 22, 2024, Plaintiff filed an IRR stating:

> Last time I had dental problems I kept getting tooth infections and even when it
> wasn't infected he kept rescheduling me for months on end. When he finally
> pulled them he messed up and left a bunch of scar tissue at my gumline so in light
> of that I refused the next dental procedure for fear of further complications. But
> now I have several teeth that need removed and repaired once again it's the
> rescheduling game. I can't drink cold water and I'm at risk for more tooth
> infections. I demand service.
>
> I want my dental procedures done promptly, professionally, and without any
> incidents or complications.

[ECF No. 1-1 at 6].

---

[3] *See* Federal Rule of Civil Procedure 10(c).

There is a notation at the bottom of Plaintiff's IRR indicating that he was triaged for dental on the date he filed the IRR, and he would be "seen within the 4 month time frame." The form is signed by Hollie Smith on November 22, 2024. Additionally, Defendant Smith filed an IRR Response on that same date stating, "Subsequent to review and investigation, the results are as follows you have been triaged by dental on 10.22.2024 and will be scheduled within the 4 month time frame for needed treatment." [ECF No. 1-1 at 5]. However, Plaintiff's allegations relating to the scar tissue remaining in his mouth from his prior dental service, as well as his inability to drink cold water were not addressed.

On January 30, 2025, Plaintiff filed an IRR stating:

On Jan 22 2025 just before a dental procedure a woman in administration at medical named Lisa berated me claiming that they diddn't [sic] have to provide medical services if I'm threatening to sue. After learning it's my fourteenth amendment to receive medical care I decided to file this grievance.

If this wowman [sic] doesn't even realize I'm constitutionally entitled to medical care, why is she in an administration position. She should not be there.

[ECF No. 1-1 at 2].

On February 13, 2025, Defendant Hollie Smith responded to Plaintiff's IRR, stating, "Subsequent to review and investigation, the results are as follows; this issue was addressed through administration and was reviewed with alleged staff. Outcomes are considered confidential and addressed at the administration level, as deemed necessary." [ECF No. 1-1 at 1].

On May 1, 2025, Plaintiff filed an IRR stating:

The last time I received an X-Ray for fractures in my mouth caused by the dentist the radiologist claimed it was negative. Why then, do I have a piece of bone in my possession, that's 9 mm long and 5 mm thick? I had another piece that was 4 mm long and 3 mm thick but lost that one. There is no way he missed that! And that means that the fracture spanning from top to bottom of my lower mandible is there was well.

> I want an MRI and another opinion from an actual proffessional [sic] and an estimated cost of what its gonna be to fix what damage Drake caused.

[ECF No. 1-1 at 4].

On May 14, 2025, Centurion Nurse Lisa Bird reviewed Plaintiff's IRR with him and wrote on the IRR the following statement, "Rawlings 1132174 expressed he feels right upper & lower mandibles have fractures. He continues to have pain from extractions done on 2/12/25. Also extractions on 1/22/25. Has "fragment" from 4/17/25. Requests add'l imaging." Under the portion of the IRR designated for "Staff Findings," Bird wrote on May 30, 2025, "Physical exam noted multiple missing and broken teeth. No palpable deformity was noted, no signs of acute infection. Examined fragment of material at his request. He was not satisfied." *See id.*

For relief in this action, Plaintiff seeks compensatory damages.

## III.    Standard

Because Plaintiff is proceeding in forma pauperis in this matter, his Complaint is subject to initial review under 28 U.S.C. § 1915(e)(2). That provision requires the Court to dismiss a complaint if it is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d

912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

## IV.    Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.,* 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy,* 847 F.3d 637, 643 (8th Cir. 2017). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.,* 512 F.3d 478, 482 (8th Cir. 2008).

**A. Official Capacity Claims Against Defendants**

Plaintiff names four employees of Centurion Health as Defendants in this action, and he asserts claims against them in both their individual and official capacities. Centurion is the contracted health care provider at the Missouri Department of Corrections. The Court will first address Plaintiff's claims against Defendants in their official capacities, which are in effect, claims against their employer, Centurion Health.

It is well established that a private corporation, like Centurion, will only be held liable under § 1983 for its own unconstitutional policies, and will not be liable under the doctrine of respondeat superior for the actions of its employees. *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 975-76 (8th Cir. 1993). To state a claim against a corporation, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders,* 984 F.2d at 975-76 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983"); *see also Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell,* 436 U.S. at 690).

In this case Plaintiff makes no allegations against Centurion. The pleadings do not contain any assertions that a Centurion Health policy, custom, or other official action was responsible for a delay or denial of access to adequate medical or dental care. Liberally construing the allegations of the self-represented complaint, Plaintiff may be asserting that Centurion is liable under § 1983 for a failure to train. However, to demonstrate deliberate indifference for purposes of failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty.,* 874 F.3d 581, 585 (8th

8

Cir. 2017). Plaintiff here makes no allegations as to other incidents resulting from a failure of Centurion to train its employees on how to care for prison inmates with dental issues. There are no allegations which could be construed to constitute a pattern of violations. For these reasons, Plaintiff's claim against Defendants in their official capacities fail to state a claim for relief and will be dismissed.

### B. Individual Capacity Claims Against Defendants

As noted above, to prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts,* 917 F.3d at 1042. The Court will assume without deciding that dental care is a serious medical need, and that Defendants knew that Plaintiff needed dental care as evidenced from the IRRs attached to the Complaint. The question appears to be what type of care was necessitated, whether Plaintiff received appropriate care and follow-up care and whether there was an unnecessary delay in providing care.

Plaintiff alleges that he first started receiving dental care from Ronnie Drake on May 13, 2024, when Drake first pulled Plaintiff's upper left wisdom tooth and a portion of his top left incisor. He claims that this left him with a large mass of scar tissue in the upper left portion of his mouth that was extremely painful, and that the pain lasted approximately 49 days. In the IRR he filed relative to this procedure on October 22, 2024, Plaintiff discusses how prior to his procedure, he had several tooth infections, but Drake kept rescheduling him for the procedure. When Plaintiff was finally able to have the procedure, the scar tissue was left by Drake and was not fixed, which left him in pain and unable to make the next dental appointment. However, Plaintiff was then left needing to have several teeth fixed, unable to drink cold water, and being

rescheduled again. According to Defendant Hollie Smith, he was refused dental service, despite his pain, reaction to cold water and complaints of the large scar tissue mass, until January 22, 2025.

Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the effect of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20.

The Eighth Circuit has found that there are circumstances in which untreated dental issues can constitute a serious medical need for a claim of deliberately indifferent medical care. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (holding that an inmate with extreme tooth pain and presenting with swollen, bleeding gums, has a serious medical condition sufficient for a deliberate indifference claim).  Although Plaintiff does not allege bleeding gums or an infection in this instance, he does allege pain and scar tissue, cold sensitivity, and the need to have several teeth fixed. Despite this issue, he was not scheduled to be seen by a dentist until 92 days after he filed his IRR on October 22, 2024. As such, the Court will issue process on Defendant Hollie Smith, who is the person who investigated Plaintiff's IRR in this instance and had the ability to schedule Plaintiff to be seen by the dentist. The Court will address Plaintiff's next claim regarding his need for dental care.

On January 22, 2025, Plaintiff got into a verbal altercation with Lisa Ivy and Ronnie Drake. He alleges that Ivy told him before his dental procedure that day that they did not need to provide him with medical care because he had informed them that he was suing them. Drake then spent an hour extracting Plaintiff's bottom right wisdom tooth and top right canine. After which Plaintiff claims he suffered a fracture down the middle of the right side of his lower mandible, causing him extreme pain. Plaintiff claims that he was unable to chew on the right side of his mouth for approximately 84 days, and two large fragments of bone came out of his mouth. Plaintiff admits that Bobby Tiefenauer did an X-Ray of the purported injury, but Tiefenauer reported that no fracture was evident.

Not long after this time, on February 12, 2025, Drake extracted Plaintiff's top right canine, and Plaintiff complains that this extraction also went wrong. He states that during the extraction, Drake pushed the tooth inward and sideways, and this caused a fracture of the bone. Plaintiff states that this caused so much pain he could not touch his gumline for approximately 99 days, but that Tiefenauer refused to do an X-Ray of his mouth despite his complaints of pain and insistence that he had fractured his jaw.

On May 1, 2025, Plaintiff filed an IRR relative to his January and February dental appointments. In this IRR, Plaintiff spoke about "the damage Drake caused," his request for follow-up testing to his two prior dental visits, specifically an MRI, and the continued pain from the prior extractions. Plaintiff also specifically noted why he believed he was suffering from a fracture to his mandible. When Lisa Bird interviewed him on May 30, 2025, she noted that Plaintiff had pain and multiple missing and broken teeth. Despite this fact, Plaintiff's IRR was denied at that time.

11

Plaintiff alleges that Tiefenauer denied him an X-Ray when he sought one on or about February 12, 2025, after he was insisting that there was a bone fracture in his mandible. And at this stage of the proceedings, the Court finds that these allegations, coupled with Plaintiff's assertions of pain, could amount to deliberate indifference of Plaintiff's serious medical needs. Accordingly, the Court will issue process on Plaintiff's assertions of deliberate indifference to his serious medical needs in relation to defendant Tiefenauer.

As to Plaintiff's assertions that Ronnie Drake failed to properly follow-up on his dental care (and improper delay) when he was complaining of pain, poor results from the procedures and further problems with his teeth, the Court finds that Plaintiff has also stated enough at this initial stage of review to state a claim of deliberate indifference to his serious medical needs.

The Court finds that Plaintiff's allegations against Defendant Lisa Ivy also state a claim for relief at this early stage of review for deliberate indifference to his serious medical needs. When Ivy evaluated Plaintiff's IRR on May 1, 2025, she knew he was asking for follow-up testing based on several factors, and she noted that he had pain and multiple missing and broken teeth. Nonetheless, Plaintiff was denied follow-up at that time. Thus, the Court will issue process as to Defendant Ivy as well.

## V.    Motion for Appointment of Counsel

Plaintiff filed a Motion for Appointment of Counsel simultaneously with the filing of his Complaint. [ECF No. 2]. The Motion will be denied at this time.

In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may

appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail,* 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

## VI.    Conclusion

For the foregoing reasons, the Court grants Plaintiff's Motion to Proceed in Forma Pauperis, assesses an initial partial filing fee of $2.64, and dismisses Plaintiff's official capacity claims against Defendants. However, the Court will issue process or cause process to be issued as to Plaintiff's claims of deliberate indifference to his serious medical needs against Defendants in their individual capacities.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall update the docket to change Defendant Smith's first name to "Hollie."

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Proceed in Forma Pauperis [ECF No. 3] is **GRANTED**.

13

**IT IS FURTHER ORDERED** that Plaintiff must, **within 30 days** of the date of this order, pay an initial partial filing fee of $2.64. He must make the remittance payable to "Clerk, United States District Court" and include his name, prison registration number, case number, and a statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel [ECF No. 2] is **DENIED at this time.**

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue as to Plaintiff's claims of deliberate indifference to his serious medical needs against Defendants in their individual capacities. Service shall be effectuated on these Centurion employees through the waiver agreement the Court maintains with Centurion: Dentist Ronnie Drake; X-Ray Technician Bobby Tiefenauer; Health Service Administrator Lisa Ivy; and Director of Nursing Hollie Smith.

A separate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 3rd day of February, 2026.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE